# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

RICHARD A. TRUESDELL     )
        )
     Plaintiff,     )     3:10-cv-00453-LRH-VPC
        )
     v.     )
        )     **ORDER**
WILLIAM DONAT, et al.,     )
        )
     Defendants.     )     October 4, 2010
        )

Before the court is defendant Adam Watson's ("defendant") motion to disqualify plaintiff Richard Truesdell's ("plaintiff") counsel (#13). Plaintiff opposed (#15), and defendant replied (#17). The court held a hearing on the instant motion on September 23, 2010. Upon thorough review of the motion and consideration of oral argument, the court grants defendants' motion to disqualify plaintiff's counsel.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, a senior correctional officer of the Nevada Department of Corrections ("NDOC"), brings his complaint pursuant to 42 U.S.C. § 1983 for violation of his First Amendment rights (#1, p. 6). Additionally, plaintiff alleges violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.*, and accuses defendant NDOC of failure to exercise reasonable care in hiring, training, supervising, and retaining individual defendants. *Id.* at 6-7.

In 2006, NDOC demoted plaintiff from senior correctional officer to correctional officer in response to an off-duty violation. *Id.* at 2. Plaintiff sought promotion one year later in September 2007, but NDOC officials denied him promotion despite plaintiff's claim that defendant Watson advised him that he was "number two on the list." *Id.* at 2. Plaintiff appealed the decision to defendant Skolnik. *Id.* at 3. Defendant Skolnik asked defendants Helling and Watson to meet with plaintiff. According to plaintiff, defendant Watson said, "you did me greasey [sic] on this," allegedly

1    referencing plaintiff's jump in the chain of command to file his appeal with defendant Skolnik. *Id.*

2    At the November 2007 meeting, plaintiff revealed to defendants Helling and Watson that he filed

3    an equal employment opportunity ("EEO") complaint alleging "matters of public concern," including

4    claims that the associate wardens on the hiring panel "were trying to keep the good old boys system

5    alive, in violation of the Department's mission statement" and engaging in "corruption in the

6    promotional process." *Id.*  Plaintiff succeeded in his appeal and NDOC promoted him to senior

7    correctional officer in January 2008. *Id.* at 4.  Plaintiff argues that due to exercising his protected

8    First Amendment rights during the appeal and EEO processes, he was subsequently placed on a five-

9    day suspension in 2008, prohibited from acting as a training officer, and denied promotion to

10   sergeant *Id.* at 4-6.

11          In the same month that plaintiff appealed the denial of promotion by defendant Watson,

12   someone filed an anonymous complaint against defendant Watson (#13, p. 3). This complaint was

13   one of several anonymous complaints filed against defendant Watson, which led to an internal affairs

14   investigation by NDOC in 2008. *Id.*  Defendant Watson hired Jeffrey Dickerson, plaintiff's counsel

15   in the instant dispute, to represent him in the internal affairs investigation.  *Id.*  Watson claims he

16   shared "highly confidential information about the case and about prison management and the

17   Warden" with Mr. Dickerson.  *Id.*  The events giving rise to the internal affairs investigation by

18   NDOC into Watson's conduct occurred during 2007 and 2008 (#13, Ex. A, p. 3).  The instant

19   complaint against defendant Watson by plaintiff includes events occurring from 2006 to 2010 (#1).

20          Defendant Watson did not consent to Mr. Dickerson's representation of plaintiff against him.

21   *Id.*  He is concerned that Mr. Dickerson's representation of plaintiff may result in the use of his

22   confidential information, obtained during the former matter, to his disadvantage in the current case.

23   *Id.*  Mr. Dickerson claims he "has no recall of the topics" discussed with defendant Watson when

24   he previously represented him during the internal affairs investigation (#15, p. 2).

25                                          **II.  LEGAL DISCUSSION**

26   **A.     Discussion**

27          **1.     Local Rule IA 10-7(a) and Nevada Rule of Professional Conduct 1.9**

28          Under Local Rule IA 10-7(a) an attorney admitted to practice before the U.S. District Court

                                                      2

for the District of Nevada "shall adhere to the standard of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada." Nevada Rule of Professional Conduct 1.9 governs duties owed by counsel to former clients. The rule provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Nev. R. Prof. Conduct 1.9(a). The rule further states that an attorney should not "use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require . . . or when the information has become generally known," nor should an attorney disclose information related to the former representation unless required or permitted by the rules. *Id.* at 1.9(c).

To successfully argue for disqualification of counsel, a party must show that the attorney it is seeking to disqualify previously had an attorney-client relationship with the party, that the former and current matters are substantially related, and that the current representation is adverse to the party seeking disqualification. *Nev. Yellow Cab Corp. v. Dist. Ct.,* 123 Nev. 44, 50, 152 P.3d 737 (2007). The Nevada Supreme Court adopted the Seventh Circuit's three part test to determine whether former and current matters are substantially related, directing courts to: (1) determine the factual scope of the former representation, (2) evaluate if it is reasonable to infer that confidential information would have passed from the former client to the lawyer in that representation, and (3) determine if that confidential information is relevant to the present matter. *Waid v. Eighth Judicial Dist. Court,* 121 Nev. 605, 610, 119 P.3d 1219, 1223 (2005).

### III. ANALYSIS

Defendant Watson claims that Mr. Dickerson obtained confidential information from him during his representation of Watson in 2008 (#13, p. 3). While the exact content of the confidential complaints against defendant Watson that were the subject of Mr. Dickerson's former representation is unknown to the court, defendant Watson states that he disclosed sensitive information regarding prison management and the claims against him. *Id.* Mr. Dickerson now represents plaintiff in a suit against defendant Watson and other prison officials alleging, among other things, that defendant

1   Watson and other associate wardens failed to promote him in violation of prison personnel
2   procedures (#1, p. 2). Plaintiff believes this is a pattern of behavior evidencing "corruption in the
3   promotional process." *Id.* at 3.   Mr. Dickerson claims he cannot remember any confidential
4   information conveyed to him by his former client, defendant Watson, and that the former and current
5   matters are not substantially related (#15, p. 2).

6   **A.      Attorney Client Relationship and Representation Adverse to the Former Client**

7          Parties agreed at the September 23, 2010 hearing that defendants met the burden of proving
8   elements one and three, previous attorney-client relationship and a current action that is adverse to
9   the former client, under *Nevada Yellow Cab Co.* First, it is undisputed that defendant Watson hired
10  Mr. Dickerson to represent him during NDOC's internal affairs investigation of the anonymous
11  complaints against him. Clearly, Mr. Dickerson and defendant Watson developed an attorney-client
12  relationship during the course of this representation that obliges Mr. Dickerson to protect his former
13  client's confidential information.  Second, Mr. Dickerson is currently representing plaintiff in an
14  action that names Watson as a defendant.  Further, plaintiff's complaint alleges several violations
15  by defendant Watson and seeks monetary damages and injunctive relief including mandatory training
16  for employees in defendant Watson's position. The current dispute is directly adverse to defendant
17  Watson, Mr. Dickerson's former client.

18  **B.      Substantial Relationship Between Former and Current Matters**

19         Determining whether the former and current actions are "substantially related" is at the heart
20  of the instant motion.  In addition to the three-part test adopted by the Nevada Supreme Court in
21  *Waid*, the Court provided additional guidance addressing the issue of substantial relatedness, stating
22  that the burden of proving a relationship between the current and former matters falls on the party
23  moving for disqualification. *Robbins v. Gillock*, 109 Nev. 1015, 1017-18, 862 P.2d 1195 (1993).
24  While the party must have evidence to support the relationship, the party is not required to divulge
25  confidential information. *Id.* at 1018.  Rather, the court should undertake a "realistic appraisal" of
26  whether confidential information likely passed between the former client and the attorney that could
27  be harmful to the former client in the present matter. *Id.*
28         In *Robbins*, the court concluded that simply because the former and current representations

4

1   involved medical malpractice claims did not mean that the cases were substantially related. *Id.* In

2   fact, the cases involved different injuries and the court found that it would be "pure speculation" to

3   suggest that the attorney gained confidential information from the former client that could be used

4   in the present case. *Id.* In contrast, this court distinguishes medical malpractice disputes, such as

5   the claims in *Robbins*, from employment discrimination cases. *See Coles v. Az. Charlie's*, 992 F.

6   Supp. 1214 (D. Nev. 1998). The court reasons that "unlike malpractice cases at issue in *Robbins*,

7   the past conduct of the defendant employer can be used to establish a pattern or practice of

8   discrimination to support an employee's claim of discrimination." *Id.* at 1217 (citing *Hawkins v.*

9   *Hennepin Tech. Ctr.*, 900 F.2d 153, 155-56 (8th Cir. 1990)). In *Coles*, plaintiffs alleged a pattern

10  and practice of discrimination against defendants. *Id.* The court found that plaintiffs' attorney, who

11  represented defendants in a prior case regarding employment practices and policies, likely obtained

12  confidential information related to plaintiffs' claims of discrimination. *Id.* As a result, the court

13  disqualified plaintiffs' attorney because defendants did not consent to her representation of plaintiffs.

14  *Id.*

15      Here, Mr. Dickerson represented defendant Watson in an NDOC internal affairs investigation

16  based on a series of nine anonymous complaints regarding defendant Watson's performance. While

17  the content of the anonymous complaints is unknown, in oral argument defendants indicated that one

18  of the complaints included allegations against defendant Watson that mirrored an incident for which

19  plaintiff received a disciplinary suspension. Without disclosing the precise details of the anonymous

20  complaint, defendants argue that the factual similarity between the two incidents is at least

21  suggestive, if not conclusive, evidence that plaintiff may have filed the anonymous complaint against

22  defendant Watson while he was also pursuing the appeal that is the subject of the present action. If

23  this is the case, Mr. Dickerson defended Watson against a complaint lodged by plaintiff during the

24  internal investigation, while he now pursues similar claims on behalf of plaintiff regarding Watson's

25  performance. This relationship between the matters would render them "substantially similar," if

26  not the exact same. Absent consent by defendant Watson, this sort of direct conflict is not

27  permissible under the rules.

28      However, even if the court does not believe this evidence supports a direct relationship

5

1    between the two claims, it still finds that confidential information likely passed from defendant

2    Watson to Mr. Dickerson and that the information is relevant to the current action.  This case is

3    analogous to *Coles*.  In the present action, plaintiff alleges a pattern of "corruption in the promotional

4    process," just as plaintiffs in *Coles* claimed that Arizona Charlie's engaged in a pattern of

5    discriminatory employment practices.  Establishing a pattern or practice of such unlawful practices

6    requires proof that defendants, routinely and over time, engaged in impermissible conduct.  In this

7    case, plaintiff's counsel, Mr. Dickerson, may have first-hand knowledge of such conduct because

8    he represented Watson, an associate warden responsible for employment decisions, in a previous

9    action regarding Watson's job performance and prison management.  Defendants need not prove to

10   the court that Mr. Dickerson *actually* possesses confidential information about prison employment

11   practices that he may use against defendant Watson.  Rather, the court must make a "realistic

12   appraisal" of whether Mr. Dickerson *likely* possesses such confidential information.  Given that

13   plaintiff alleges a pattern of corrupt practices by defendants, specifically including defendant

14   Watson, and that plaintiff's counsel, Mr. Dickerson, previously represented defendant Watson in an

15   internal affairs investigation addressing complaints that arose at the same time as the present dispute,

16   the court finds that it is likely that Mr. Dickerson possesses confidential information that could be

17   used against his former client.  Further, defendant Watson has not consented to Mr. Dickerson's

18   representation of plaintiff against him.  In the interests of justice and fairness to Mr. Dickerson's

19   former client and for the foregoing reasons, the court grants defendants' motion to disqualify.

20                                    **VI. CONCLUSION**

21            Plaintiff's counsel may not represent a client with interests adverse to a former client in the

22   same or a substantially related matter without the former client's consent.  Defendant Watson is a

23   former client of plaintiff's counsel with interests adverse to plaintiff.  Defendants presented evidence

24   suggestive of a relationship between the former and current matters, and the court concludes it is

25   reasonable to infer that confidential information passed from defendant Watson to plaintiff's counsel

26   that is relevant to the current case.

27   ///

28   ///

1      **IT IS THEREFORE ORDERED** that defendants' motion to disqualify (#13) is

2  **GRANTED**.

3      **DATED:**          October 4, 2010.

4

5      _____

6                  **UNITED STATES MAGISTRATE JUDGE**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28