UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD TRUESDELL, an individual, | ) |
| Plaintiff, | ) |
| | ) 03:10-CV-00453-LRH-VPC |
| v. | ) |
| WILLIAM DONAT, an individual; DONALD HELLING, an individual; KAREN KENDALL, an individual; ADAM WATSON, an individual; HOWARD SKOLNIK, an individual; STATE OF NEVADA, ex rel. its DEPARTMENT OF CORRECTIONS, a governmental entity; | ) ORDER |
| Defendants. | ) |

Before the court is the State of Nevada *ex rel.* its Department of Corrections, William Donat, Donald Helling, Karen Kendall, Adam Watson, and Howard Skolnik's ("Defendants") Motion for Summary Judgment (#58[1]). Plaintiff Richard Truesdell has responded (#78), and Defendants have replied (#82). Also before the court is Truesdell's objection to Defendants' accounting of attorney's fees, fees which Truesdell has been ordered to pay (#79).

I.  **Facts and Procedural History**

Richard Truesdell has worked as a Correctional Officer for the Nevada Department of

---

[1] Refers to the court's docket number.

1  Corrections ("NDOC") since 1996, mostly at the Nevada State Prison in Carson City, Nevada.
2  (Plaintiff's Opposition (#78), Ex. 1 ¶ 1.) In April 2006, Truesdell was promoted to Senior Correctional
3  Officer with a six-month probationary period, following NDOC policy. (Defendants' Motion for
4  Summary Judgment ("MSJ") (#58), Ex. 1 p. 15:16-18; *Id*. at Ex. 5 (*citing* Nevada Admin. Code
5  284.462).) On April 21, 2006, Truesdell went on three-day temporary active duty with the Nevada
6  National Guard, which required him to fly from Reno, Nevada to Las Vegas, Nevada. (*Id*. at Ex. 2.)
7  While at the Reno airport, Truesdell had a couple of drinks; while on the plane, he had a couple more.
8  (*Id*. at Ex. 3, p. 5.) He had also accidentally taken an Ambien sleeping pill at some point. (*Id*. at Ex. 3, p.
9  6.) When Truesdell arrived at the Las Vegas airport, he was drunk and belligerent. (Defendants' MSJ
10 (#58) at Ex. 3, p. 4.) He barricaded himself in an airport bathroom, and he was eventually arrested. (*Id*.)

11     Truesdell never completed his National Guard duty. Instead, he was disciplined, and the National
12 Guard later pushed him out on the basis of this incident.[2] (*Id*. at Ex. 1, pp. 44-45, 56.) When Truesdell
13 returned to work following his arrest, he remained a probationary Senior Corrections Officer, but in July
14 2006 Truesdell was notified that he did not successfully weather the probationary period. (*Id*. at Ex. 5.)
15 He therefore returned to his position as a (non-Senior) Corrections Officer. (*Id*.)

16     In December 2006, Truesdell was arrested for drunk driving when he crashed into some parked
17 cars. (Defendants' MSJ (#58) at Ex. 7.) Later that evening, after being cited and released but apparently
18 still intoxicated, Truesdell fired a round from a handgun into his mattress. (*Id*. at Ex. 6.) The following day,
19 NDOC placed Truesdell on administrative leave. (*Id*. at Ex. 10.) This included Truesdell's removal from
20 his position as the Nevada State Prison Range Master. (*Id*. at Ex. 12, p. 5.)

21     In September 2007, Truesdell reapplied for a position as Senior Corrections Officer. He did not
22 get the job. (Plaintiff's Opposition (#78) at Ex. 1, ¶ 7.) Contesting this decision, Truesdell wrote an email
23 to defendant Howard Skolnik, the Director of NDOC. In this October 2007 email, Truesdell complained

---

25     [2] Truesdell has not produced any discharge papers. He contends that the National Guard "asked
26 [him] to leave the military." (Defendants' MSJ (#58) at Ex. 1, p. 60.)

that he should have gotten the job because he was more qualified than those who did, and that it appeared that the "good old boy" system was operating to deprive him of a promotion. (Defendants' MSJ (#58) at Ex. 14.) This email mentioned that defendant Adam Watson–an Assistant Warden at Nevada State Prison and one of the people in charge of promotions–had told Truesdell that he was "tired of hearing [Truesdell's] name" and that Truesdell had to "keep [his] head down" if he wanted a promotion.[3] (*Id*.)

"You did me greasy on this," Watson told Truesdell when Watson learned that Truesdell had complained about him to the NDOC Director. (Plaintiff's Opposition (#78) at Ex. 1, ¶ 7.) Still, Truesdell was promoted to Senior Corrections Officer in December 2007 after a meeting with Watson and defendant Don Helling. (Defendants' MSJ (#58) at Ex. 1, p. 103:4-5.)

In January 2008, Truesdell was suspended for ten days for his December 2006 arrest. (*Id*. at Ex. 16.) Truesdell appealed his suspension, and it was reduced to five days. (Plaintiff's Opposition (#78) at Ex. 1, ¶ 3.) Since then, Truesdell has sought promotion to Sergeant with no success. Each time Truesdell has submitted his name for promotion, he has ranked too low in the applicant pool to receive the promotion–this despite Truesdell's claim that the promoted officers have less training, experience, and qualifications than he does. (*Id*. at Ex. 1, ¶ 9-10; *see also* Defendants' MSJ (#58) at Ex. 18.) Finally, Truesdell claimed in May 2010 that he had found an "anonymous note" in his work folder containing the statements "You complained about Watson and now he is refusing to promote you" and "there [sic] using the good old boy system to keep their thumb on people they don't like or keep them down." (Plaintiff's Opposition (#78) at Ex. 5.)

///

///

---

[3] Truesdell also alleges that he initiated an "EEO complaint" resulting from the conversation he had with Watson. However, Truesdell alternately claims that this complaint was filed in July 2007 and September 2007. (*Compare* Defendants' MSJ (#58) at Ex. 1, p. 102 *with id*. at Ex. 17.) If the former, then the complaint was lodged before the conversation with Watson took place.

Truesdell has alleged a claim for retaliation in violation of his First Amendment rights under 42 U.S.C. § 1983 and a claim for negligent training, hiring, and supervision.[4]

**II.  Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine

---

[4] Truesdell originally alleged a violation of the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, but he dropped this claim after Defendants filed their Motion for Summary Judgment.

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

### III. Discussion

#### A. First Amendment Retaliation

"It is well settled that the state may not abuse its position as employer to stifle the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The sketch of a First Amendment retaliation claim under 42 U.S.C. § 1983 includes protected speech, an adverse employment action, and causation between the two. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). In the Ninth Circuit, this sketch is fleshed out into five questions: (1) Did the plaintiff speak on a matter of public interest? (2) Did the plaintiff speak as a private citizen or as a public employee? (3) Was the plaintiff's protected speech a substantial or motivating factor in the adverse employment action? (4) Did the state have adequate justification for treating the employee differently from other members of the general public? (5) Would the state have taken the adverse employment action even absent the protected speech? *Eng*, 552 F.3d at 1070.

Truesdell cannot answer the first question affirmatively. First, Truesdell bears the burden of showing that his speech "can fairly be considered to relate to" matters of public concern. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). There is no many-factored test for whether a statement addresses a matter of public concern; instead, courts are directed to interrogate the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147 (1983). "It is clear . . . that the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Desrochers*, 572 F.3d at 709. While the Ninth Circuit has broadly construed the term "public concern,"

> when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.

*Johnson v. Multnomah County, Or.*, 48 F.3d 420, 425 (9th Cir. 1995).

Here, Truesdell alleges that his October 2007 email addressed "wrongful conduct by government . . . officials," "discrimination," and "the inefficient performance of a public agency." (Plaintiff's Opposition (#78) at p. 3-4.) These are matters of public concern. *See Desrochers*, 572 F.3d at 718 n. 25 (collecting cases). However, the court "look[s] to what the employee[] actually said, not what [he] said after the fact." *Id*. at 711. And Truesdell's October 2007 email does not address these matters in more than a marginal way. *See Johnson*, 48 F.3d at 425.

Turning first to the email's content, Truesdell's email is couched in the language of employee grievance, objecting to NDOC's failure to promote him. The opening sentence is "I'm asking for a new Senior Correctional Officer interview to be held for the Carson City areas for the following reason[s]." Three of the four reasons Truesdell gives are unique to him: he was ranked number two on the list of interviewees, he was told by Watson to "keep [his] head down," he was more experienced than the eventual selections. (Defendants' MSJ (#58) at Ex. 14.) These types of personalized objections "deal[] with individual personnel disputes and grievances" that do not "relate[] to some issue of interest beyond the employee's bureaucratic niche." *See Tucker v. State of Cal. Department of Education*, 97 F.3d 1204, 1210 (9th Cir. 1996) (collecting cases, citations and quotation marks omitted). That is, these reasons are "mere extension[s]" of a personnel dispute, and therefore they are not matters of public concern. *See Connick*, 461 U.S. at 148.

Truesdell's fourth reason–that "[NDOC officials] were 'digging' down on the [interviewee list] to get to the Officers that they wanted"–is colorably a matter of public concern, at least when read in conjunction with the email's coda that "[NDOC officials] are trying to keep the 'good old boy' system alive." (Defendants' MSJ (#58) at Ex. 14.) This reason addresses potential governmental inefficiency. *See*

6

*Hyland v. Wonder*, 972 F.2d 1129, 1139 (9th Cir. 1992) (holding that speech relating to "inept, inefficient, and potentially harmful administration of a government entity" is of public concern). However, this speech is subordinated to Truesdell's personnel grievance: it is embedded within a list of reasons that he should be granted a new interview. Therefore, this reason may only be a "passing reference to [governmental inefficiency,] incidental to the message conveyed." *Robinson v. York*, 566 F.3d 817, 823 (9th Cir.2009) (quotation marks and citation omitted). Such incidental references do not transform a personnel grievance into a matter of public concern. *Id*.

Even if the content of Truesdell's email were, on balance, public-concerning, the form and context of the email are not.[5] Truesdell's email to the NDOC Director was a private expression of views confined within a governmental department. When expression takes the form of "internal employee grievances which were not disseminated to the public, this portion of the *Connick* test cuts against a finding of public concern." *Desrochers*, 572 F.3d at 715. Similarly, the context of Truesdell's email cuts against a finding of public concern. An employee's motive in speaking is relevant to the public concern analysis, *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir.1999), and Truesdell's speech was animated by dissatisfaction at being passed over for promotion. In determining if speech "further[ed] some purely private interest," the *Desrochers* court considered whether the speech was precipitated by an adverse employment action, whether the employee had ever filed a grievance,[6] and whether personality conflicts existed. 572 F.3d at 715. Here, Truesdell spoke up against the "good old boy" system only after being passed over, he had filed prior employee grievances,[7] and he had a personal conflict with Watson, a

---

[5] While the speech's content is the most important part of the public concern inquiry, it is not the entire inquiry. *See Johnson*, 48 F.3d at 424.

[6] The court reasoned that an employee who had never filed a grievance was more likely acting "altruistically" than one who had filed personal employee grievances before. *See Desrochers*, 572 F.3d at 715.

[7] Indeed, Truesdell had sued NDOC once before, in 1999. (*See* Defendants' MSJ (#58) at Ex. 1, p. 155:3-4.)

7

member of the promoting committee. These contextual factors indicate that Truesdell's speech did not "seek to bring to light actual or potential wrongdoing or breach of public trust," but rather sought to exorcize his "dissatisfaction with [his] employment situation."[8] *Id.* (*quoting Connick*). Finally, in his deposition, Truesdell repeatedly explains that he believes he was being "retaliated against" because of his arrests. (Defendants' MSJ (#58) at Ex. 1, pp. 95, 98-99.) If these beliefs framed the context of his speech–as Truesdell's testimony indicates–the thrust of Truesdell's email was a personal matter, not a public one.[9]

Finally, even if Truesdell's speech were a matter of public concern, Truesdell has not shown that his speech was a "substantial or motivating factor" in his failure to be promoted. *See Eng*, 552 F.3d at 1071 (noting that the plaintiff bears the burden of showing causation). First, Truesdell provides inconsistent explanations as to the effect of the October 2007 email. On the one hand, this email resulted in his promotion to Senior Corrections Officer; on the other hand, Truesdell claims this email thwarted his promotion to Sergeant. Second, Truesdell invites an inference of causation from the twelve-month temporal proximity between his speech and his first failure to be promoted. However, this temporal proximity, standing alone, is too attenuated to support such an inference. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000) (rejecting a one-year interval as too long to support an

---

[8] Truesdell's anonymous note–confirming his suspicions about the "good old boy" system–is hearsay, inadmissible at trial. Fed. R. Evid. 802. Since the content of this note is inadmissible, the court does not consider this evidence at summary judgment. *See Celotex*, 477 U.S. at 324.

[9] Truesdell cites two other complaints as the basis for his § 1983 claim, an "EEO complaint" and a May 2010 grievance. Since the allegations in these complaints are identical to those in the 2007 email, the same public concern analysis applies. In addition, the May 2010 grievance cannot be the basis of Truesdell's claim since he does not allege a subsequent adverse employment action. *See Coszalter*, 320 F.3d at 973. Finally, Truesdell has not carried his burdens with respect to whether his 1999 suit was a basis for his failure to become a permanent Senior Corrections Officer in 2006. He has provided no evidence as to the nature of his participation in the suit, no evidence as to whether his participation was as a private citizen or a public employee, and no admissible evidence connecting the 1999 suit to the 2006 events. *See Eng*, 552 F.3d 1070-71 (describing the elements of a First Amendment retaliation claim on which the plaintiff bears the burden of proof).

inference of causation). Third, Defendants have provided ample evidence that Truesdell simply did not rate high enough during Sergeant recruitment to warrant a promotion.[10] ((Defendants' MSJ (#58) at Ex. 18.) And this evidence is apart from any reason NDOC may have had on the basis of Truesdell's arrests to avoid promoting him. Since no reasonable jury could find for Truesdell on the causation prong of his retaliation claim, this claim must fail.[11]

In the absence of Truesdell's § 1983 claim, Truesdell's Complaint only alleges a violation of state law. The court declines to exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367(c).

### B. Attorney's Fees

On March 14, 2012, Magistrate Judge Cooke ordered Truesdell to pay Defendants' attorney's fees associated with discovery relating to Truesdell's now-dropped USERRA claim. (Order of March 14, 2007 (#73).) Defendants' counsel submitted an affidavit with an itemized spreadsheet associating time spent with specific tasks. (#75.) Truesdell has objected to the time allotted to these tasks as well as to the specificity of Defendants' counsel's records. (#79.[12])

Federal Rule of Civil Procedure 37(d) permits the award of "reasonable expenses, including attorney's fees" caused by a party's failure to engage in discovery. Reasonable fees may be established by attorney affidavit, so long as they are "sufficiently detailed to enable the court to consider all the factors necessary in setting the fees." *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993).

The court finds that Defendants' counsel's records are sufficiently specific, counsel's hourly rate is reasonable, and time and expenses are also reasonable.

///

---

[10] Nor has Truesdell provided evidence of similarly situated officers who were promoted over him.

[11] Because the court concludes that Truesdell has not carried his burdens at summary judgment, the court does not address Defendants' affirmative defenses to the retaliation claim.

[12] Truesdell's objection was filed one day late, but, good cause being shown, the court will accept this filing.

9

### IV. Conclusion

For the foregoing reasons, summary judgment is appropriate.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#58) is GRANTED. The Clerk of the Court is directed to enter final judgment in favor of Defendants.

IT IS FURTHER ORDERED that Plaintiff will pay Defendants' attorney's fees in the amount of $3,977.14.

IT IS SO ORDERED.

DATED this 29th day of October, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE